James J. Godfroy *v.* Henry Disbrow, Samuel Gerard, Alexander Mackintosh, Æneas Mackintosh, James Mackintosh, Ann Hunt, Jane Mackintosh, Archange Shaw, Catharine Mackintosh, Eliza Reynolds, and Todd Reynolds.

The ordinance of 1787, for the government of the Northwest Territory, does not declare that a deed shall be void, or that the title to land shall not pass by it, unless such deed be recorded. The object of all registry laws is to protect subsequent *bona fide* purchasers, and there is nothing in the ordinance making an unrecorded deed void as against the grantor.

The fact that a mortgage for purchase money, given at the time the conveyance was made, was executed with all proper formality, raises the presumption that the deed (which, in this case, had been lost, unrecorded,) was likewise properly executed.

A deed executed without a witness, is good in equity as a contract for the sale of land, and may be enforced as such.

Under the act of June 9th, 1819, it is necessary for a party who wishes to avoid the effect of a subsequent conveyance first recorded, to show that the grantee, in such conveyance, had notice of the prior conveyance when he took his deed, or that he had not paid a good and valuable consideration.

Where the first purchaser is in possession of the premises, and the second purchaser is aware of that fact at the time he purchases, that is sufficient notice to him of the rights of the first purchaser; and he must take the premises subject to all equities existing between his grantor and the first purchaser.

Although a party may not himself be a *bona fide* purchaser without notice, yet, if his grantor was such purchaser, the former is entitled to all his rights, and the protection which the law would give him.

The presumption is, that a subsequent purchaser, who has got his deed first recorded, is a *bona fide* purchaser without notice, until the contrary is made to appear.

Where there is an adverse possession, the legal title cannot pass by a conveyance from a person out of possession.

This was a bill filed to establish a lost deed, and praying that the several defendants claiming under the grantor might be compelled to release to complainant.

Godfroy *v.* Disbrow.

The facts of the case appear sufficiently in the opinion of the Court.

*Fraser, Goodwin & McClelland,* for complainant.

*A. D. Fraser.*

I. This is a clear case for equity jurisdiction, on several grounds; and especially on the ground of the loss of the deed from Mackintosh to Godfroy.

It is a well settled principle that if a lost deed concerns the title to real estate, it is competent to come into this Court and *establish the possession,* or to have a re-execution of a lost deed. 1 *Madd. Ch.* 23; 2 *Atk. R.* 61; 1 *J. Ca.* 417.

It is upon this principle that grants are presumed, or supplied, in support of a long possession, and equity will not permit such possession to be disturbed. 1 *Madd. Ch.* 25; *Jer. Eq.* 362; 1 *Vern. R.* 195; 2 *Vern. R.* 390, 516; 1 *Pet. R.* 241.

II. The Court will interfere to vacate a deed which throws a cloud over complainant's title. 17 *Ves. R.* 111; 5 *Paige R.* 493; 2 *Paige R.* 435; 2 *Story Eq.* 8, 17.

III. It is conceived that this Court had also jurisdiction under the statute of 1840, to quiet the complainant's title, and to decree a release of defendants' pretended interest in the premises. *Laws* 1840, *p.* 127.

IV. The complainant is entitled to the relief sought, having been in possession claiming adversely at the time of the several transfers subsequent to the conveyance under which he claims title. The doctrine of adverse possession was fully recognised as law in this state, by the Supreme Court, in the case of *Bruckner* v. *Lawrence, MS. March,* 1843.

V. The statute of limitations is available to protect the possession of a party which has been continued and adverse.

VI. The possession of complainant was notice of his claim.

*H. T. Backus,* for defendant Disbrow.

The complainant is not entitled to the relief prayed for.

I. The bill and evidence fail to disclose that he has or ever had a deed of the premises in question, which could avail as against the defendant.

1. It does not appear that the deed, which is set up in the bill as the foundation of his title, was executed in accordance with the ordinance of 1787, and the law in force respecting the execution of such instruments. There is no proof that the deed had the requisite witnesses, &c. *Vide Ordinance of* 1787, *(R. S. p.* 24.)

2. The deed from Mackintosh to Godfroy, (if any was ever executed) is void for want of being recorded. *Ordinance of* 1787, *(R. S. p.* 24;) *Laws* 1820, *p.* 157.

II. The fact that the bill has been taken as confessed against Gerard, is of no avail. He is a non-resident defendant, and never was served with process. Moreover, Disbrow, his grantee, by his answer, denies notice to Gerard and to himself, and complainant must therefore substantiate his case.

III. Disbrow is entitled to all the rights of his grantor, Gerard, whether he himself was affected with notice or not. No notice is proven as to Gerard, who must, therefore, be presumed to have been a *bona fide* purchaser without notice.

IV. Neither the statute of limitations nor adverse possession, can be the ground of affirmative relief in this Court. Adverse possession is properly tried by jury as a question of fact.

V. If the adverse possession of complainant is of any avail, it can only be as to those parts of the land where

there has been an actual *pedis possessio.* It can avail as to no other parts of the premises.

THE CHANCELLOR. The bill states that Gabriel Godfroy, on the 10th day of October, 1844, purchased the premises in question, situate on the River Raisin, of Angus Mackintosh, for $1,000 ; and that Mackintosh executed a deed to him, which was not recorded, and has since been lost. To secure the purchase money, Godfroy executed a bond and mortgage of the premises to Henry I. Hunt, the son-in-law of Mackintosh,—Hunt being an American citizen *residing in Detroit,* and his father-in-law, a British subject, residing in Canada, opposite Detroit. The bond and mortgage were made to Hunt, in consequence of the late war between the United States and Great Britain, and to prevent any difficulty in the collecting of the money. Godfroy took immediate possession of the premises, and he and his grantor, the complainant, have been in possession from that time to the present, and have erected valuable buildings, and made other valuable improvements. In 1835, Gabriel Godfroy sold to complainant. In 1827, Mackintosh, with his family, left Canada, and went to Scotland to reside, where he afterwards died. In July, 1835, Alexander Mackintosh, one of the heirs of Angus Mackintosh, conveyed the premises to Samuel Gerard of Montreal, who, April 25th, 1836, conveyed them to Disbrow. The deed from Alexander Mackintosh to Gerard was recorded, November 12th, 1835, and the one from Gerard to Disbrow, May 13th, 1836. The bill is filed against Disbrow, Gerard, and the heirs at law of Angus Mackintosh. Disbrow is the only one of the defendants that has appeared and answered, and the bill has been taken as confessed by the other defendants, all of whom, except Ann Hunt and Catharine Mackintosh, on whom the

subpœna was personally served, are non-resident defendants, and have been brought into Court by advertisement under the statute.

Disbrow, in his answer, denies all notice of the conveyance from Angus Mackintosh to Gabriel Godfroy, and insists that both he and his grantor, Gerard, are *bona fide* purchasers, without notice.

The existence and loss of the deed from Angus Mackintosh to Gabriel Godfroy, are fully established by the positive testimony of Godfroy, and the voluminous circumstantial testimony in the case. But it is insisted that, under the ordinance of 1787, it was necessary that the deed from Mackintosh to Godfroy should be recorded, in order to pass the title. I do not so read the ordinance. It does not declare the deed shall be void, or the title shall not pass, unless it is recorded. The object of all registry laws is to protect subsequent *bona fide* purchasers. It would, therefore, be a harsh construction of the ordinance, where the grantee had neglected to have his deed recorded, to say it should, for that reason, be void between him and the grantor. There is nothing in the ordinance requiring such a construction to be given to it. 1 *Blackford R.* 162.

It is further objected that it does not appear from the evidence whether the deed was properly executed, or what premises, or what estate in them was conveyed. Godfroy states explicitly he purchased the farm in question from Angus Mackintosh, in 1814, and that Mackintosh executed to him a deed for it, which is lost; and that he was the owner of the farm in fee simple, from 1814 to 1835, when he sold it to complainant. It is true he says nothing about any witnesses to the deed. The question does not appear to have been asked him. There is, however, I think, sufficient evidence before the Court, to war-

rant the conclusion it was properly executed.    The mortgage given at the same time, and which has been found since the witness was examined, appears to have been executed with all proper formality, and it is reasonable to suppose the same formality was observed in the execution of the deed.    If there were no witness, it would be good in equity as a contract for the sale of the land, and, as such, might be enforced against the heirs of Angus Mackintosh.

By "an act in addition to an act entitled 'an act concerning deeds,'" adopted by the Governor and Judges of the territory of Michigan, June 9, 1819, all deeds previously given, and not recorded, were declared to be fraudulent and void against subsequent purchasers and mortgagees, unless recorded on or before the first day of December, 1821.    To get rid of the legal effect of a subsequent conveyance first recorded, it is necessary to show the second grantee had notice of the prior conveyance when he took his deed, or that he has not paid a good and valuable consideration.    Where the first person is in possession of the premises, and the second purchaser is aware of that fact at the time he purchases, that is sufficient notice to him of the rights of the first purchaser; and he must take the premises subject to all equities existing between his grantor and the first purchaser.    *Rood* v. *Chapin, ante,* 79. Disbrow knew complainant was residing on the land when he purchased of Gerard.    He therefore took his deed subject to all equities, if any, existing between complainant and Gerard.    He was not a *bona fide* purchaser without notice.    Still, if his grantor was such purchaser, he is entitled to all his rights, and to that protection which the law would give Gerard.    There is no evidence showing Gerard had notice of complainants' title, when he purchased, or that he knew complainant was in possession of the pre-

mises.    The bill has been taken as confessed against him ; but as he is a non-resident defendant, and has not appeared, it is no evidence against him, much less against Disbrow, his grantee, who has appeared, and put in an answer denying notice to his grantor, as well as to himself. The presumption of law is, that a subsequent purchaser, who has got his deed first recorded, is a *bona fide* purchaser without notice, until the contrary is made to appear.

There is another ground, however, on which the complainant is entitled to the relief he asks against the deed from Alexander Mackintosh to Gerard.   It is this.   By reason of the adverse possession of complainant, when *this* deed, as well as the one from Gerard to Disbrow, was executed, the legal title did not pass.   *Bruckner* v. *Lawrence, MS. Sup. Court, March,* 1843.   It is unnecessary to inquire whether, if the legal title had been in Alexander Mackintosh, when he conveyed to Gerard, an equitable title would have passed by the deed, notwithstanding the adverse possession.    It would not, so as to bar a prior equity.

The defendants must release to complainants, and pay costs.